IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PATRICIA BAUM,<br><br>    Plaintiff,<br><br> vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | **8:22CV324**<br><br><br><br>**MEMORANDUM & ORDER** |

   This is an action for judicial review of final decision of the Commissioner of the Social Security Administration ("the Commissioner"). Filing No. 1. The claimant, Patricia Baum, appeals the Commissioner's decision to deny her application for Social Security benefits under the Social Security Disability program, ("SSD"), and seeks review pursuant to 42 U.S.C. § 405(g). *See* Filing No. 12, Plaintiff's Motion for an Order Reversing the Commissioner's Decision; and Filing No. 17, Defendant's Motion to Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g). A transcript of the hearing held on August 3, 2021, is found in the record beginning at Filing No. 9-2 at 34. This Court has jurisdiction under 5 U.S.C. §§ 702 and 706 to review the final decision.

**BACKGROUND**

   **I.**  **Procedural History**

   Baum filed an application for disability benefits under the SSD program on September 30, 2020, alleging a date of disability onset of April 20, 2020. Filing No. 9-2 at 16. Baum alleged that major depressive disorder, ADHD, bipolar disorder, PTSD, and generalized anxiety disorder prevented her from performing substantial gainful activity. Filing No. 9-6 at 6. The Commissioner denied Baum's application on January 6, 2021, and Baum subsequently filed a request for reconsideration. Filing No. 9-4 at 18.

1

Following the affirmation of the initial disability determination, a request for hearing was granted on April 12, 2021, wherein Baum testified to her disabling limitations. *Id.* at 24. The Administrative Law Judge ("ALJ") found that Baum was not disabled and denied benefits on August 12, 2021. Filing No. 9-2 at 12. The Appeals Council denied review on July 13, 2022, making the August 12, 2021, decision by the ALJ final. *Id.* at 1. Baum seeks review of the final decision.

## II. Testimony from ALJ Hearing

Baum testified regarding her living arrangement. Filing No. 9-2 at 40. Baum stated that she lives by herself and receives assistance with daily errands from her ex-husband. *Id.* Her ex-husband goes to the grocery store and picks up her prescriptions so that Baum can avoid social interactions that triggered her anxiety. *Id.* She is still able to clean her home without assistance but has difficulty keeping up with personal hygiene. *Id.* at 51. Baum has a vehicle and can attend her doctor appointments and therapy sessions on her own. *Id.* at 40. She has postponed plans to move near her sister due to the frequency of these appointments. *Id.* In June of 2022, Baum stayed with her sister to care for her following surgery. *Id.* at 43. For approximately two weeks, she assisted her sister with cooking and cleaning, and made one trip to the grocery store. *Id.*

Prior to her COVID-19-related layoff on April 20, 2020, Baum was an application specialist with Scantron for over thirty years. Filing No. 9-2 at 44. This desk-bound and at-home position required Baum to assist employees with technical issues as well as data maintenance. *Id.* When asked if she could return to this line of work, Baum testified that she could, but expressed concerns that she had missed lots of changes to their systems and would not be as helpful as she was before. *Id.* She then stated that she had not applied for any other job with Scantron due to her social anxiety and fear of interacting

2

with others at work. *Id.* at 45. In order to support herself financially, Baum received unemployment for a time in addition to a severance and rent assistance. *Id.* at 48. She testified that these benefits have allowed her to stay in her apartment and pay for her prescriptions. *Id.*

Regarding her social anxiety, Baum testified that she experienced an increase in her symptoms around the time she was laid off from Scantron. Filing No. 9-2 at 46. She stated that to avoid social interactions, she chooses "typing everything" in text messages or other correspondence over the computer. *Id.* The frequency of Baum's therapy appointments to treat these symptoms has varied, with her current schedule being once every two weeks. *Id.* Baum testified that part of her therapy is to attend these appointments in person to work on interacting with others. *Id.* In addition to her anxiety, Baum experiences frequent "up and down" cycles due to her bipolar disorder. *Id.* at 50. She stated that times when she is "down" can be severe and occur approximately two to three times each month and may last for several days. *Id.* at 51. During these down cycles, Baum testified that she sleeps much of the time. *Id.* at 52. As a result, Baum would miss several days of work. *Id.* at 56.

When asked why she could not work from home away from others like her prior position, Baum stated her diminished concentration, mental status, racing thoughts, and the effects of her prescriptions prevent her from learning a new job. Filing No. 9-2 at 53. Baum testified that while she was previously very detail-oriented and capable of working for long periods of time, she could no longer work that intensely. *Id.* at 55. Baum mentioned her memory has become more of a problem, yet she does not have difficulty remembering doctor's appointments or to take medications. *Id.*

A vocational expert ("VE") was present at the hearing and offered Dictionary of Occupational Titles ("DOT") classifications of Baum's past relevant work experience. Filing No. 9-2 at 56. The VE classified Baum's past relevant work experience as a "user support analyst." Id. The ALJ asked the VE if an individual with the ability to understand simple instructions and a position that required no more than occasional social interactions would have the ability to perform Baum's past work as a user support analyst. The VE gave the opinion that they could not. Id. at 58. The VE offered three alternative occupations: a linen room attendant, laundry worker, and counter supply worker. Id. The VE also testified that a person who missed several days of work each month would not be able to maintain employment of that kind. Id. at 59. Baum's attorney asked the VE if any of those positions would still be available if an individual was unable to concentrate for eleven to fifteen percent of the day. Id. at 60. The VE testified that those positions would likely be unavailable. Id.

### III.     Medical Evidence

Baum's primary care physicians, Thomas Vinton, M.D. and Jennifer Stodden, PA-C, cared for her in the years leading up to the April 20, 2020, alleged disability onset. Filing No. 9-7 at 103. Dr. Vinton and Stodden treated Baum for asthma, bipolar disorder, anxiety, depression, and gastrointestinal issues, among other ailments. Id. Bruce Lundak, M.D., performed urological procedures related to Baum's kidney stones and urinary tract infections. Id. at 10. Baum attended talk therapy appointments with Kristine Wiley, LIMHP, in conjunction with regular psychiatric evaluations with Praveen Fernandes, M.D. Id. at 235. Baum suffered from various physical ailments such as obesity, asthma, chronic urinary tract infections, back pain, and cardiac conditions,

however, mention of these examinations will be largely omitted from this discussion due to Baum's citing only her psychological conditions as being the root of her disability claim.

### 1. Primary Care Examinations

On September 9, 2019, Dr. Vinton treated Baum for allergies and evaluated her prescriptions.  Filing No. 9-7 at 95.  She stated that her Adderall prescription for her ADHD was effective and requested a refill.  *Id.*  Baum indicated that she took a leave of absence the year prior due to a manic episode related to her bipolar disorder.  *Id.*  Dr. Vinton continued all of Baum's ongoing prescriptions.  *Id.*

On January 29, 2020, Baum presented with some shortness of breath and symptoms of a severe urinary tract infection.  Filing No. 9-7 at 90.  She also indicated that, although she discontinued taking mood-stabilizers, she was not having trouble regulating her moods.  *Id.*  Baum stated she was previously hospitalized in 2017 for a suicide attempt via a drug overdose.  *Id.*  She indicated that she was experiencing tachycardia following the drug overdose, yet her cardiac tests were normal.  *Id.*  Dr. Vinton noted in his record that Baum was speaking rapidly and laughing excessively, seemingly symptoms of her bipolar disorder.  *Id.* at 91.  Dr. Vinton refilled the ongoing lisinopril and Adderall prescriptions, and recommended Baum to follow-up with her psychiatrist, Dr. Praveen Fernandes, regarding her hypomania symptoms.  *Id.*

On March 30, 2020, Dr. Vinton's notes again indicated that Baum exhibited signs of hypomania such as rapid, pressured speech and excessive laughter.  Filing No. 9-7 at 83.  Baum indicated her disinterest in mood stabilizer medication, against Dr. Vinton's recommendation.  *Id.* at 84.  Baum continued to take venlafaxine ER, Adderall, and Symbicort.

On June 23, 2021, Baum was treated by Jennifer Stodden for back pain and asthma. Filing No. 9-7 at 326. Stodden refilled Baum's prescriptions and included an addendum to this record stating her opinion as to Baum's disability status. Id. at 334.

On March 4, 2021, Baum saw Jennifer Stodden for medication refills and alerted her to the fact that she would be applying for disability benefits. Filing No. 9-7 at 329. Baum continued her lisinopril, Adderall, and other prescriptions. Id.

**2. Psychiatric Examinations**

On April 11, 2019, Kristine Wiley, LIMHP, saw Baum for a talk therapy appointment. Filing No. 9-7 at 228. Baum reported "not feeling right" and that she recently had been shopping impulsively. Id. She also reported struggling with her depression symptoms, having decreased motivation, and missing a significant amount of work. Id. As a result, Baum met with Dr. Fernandes days later, on April 16, 2019. Id. at 229. Dr. Fernandes noted that Baum was not tolerating her dosage of Seroquel and she was experiencing tiredness. Id. Dr. Fernandes advised Baum to discontinue taking Seroquel for the time being. Id. Baum ceased therapy with Ms. Wiley until February 22, 2021. Id. at 283.

On July 16, 2019, Baum saw Dr. Fernandes for a follow-up appointment regarding her depression. Filing No. 9-7 at 235. Dr. Fernandes noted a considerable improvement in Baum's symptoms and prescribed lorazepam and venlafaxine for her anxiety and depression. Id.

During a medication and status check of Baum on February 13, 2020, Dr. Fernandes noted she appeared more "hyper." Filing No. 9-7 at 237. Baum was "talking continuously and tangentially" and reported behaving this way for several months. Id. Dr. Fernandes expressed concern that Baum was exhibiting symptoms of bipolar 2 disorder.

*Id.* Baum expressed disinterest in taking antipsychotics for these symptoms. *Id.* Dr. Fernandes continued Baum's venlafaxine and lorazepam prescriptions and added lurasidone to treat her bipolar disorder. *Id.* Dr. Fernandes requested a follow-up appointment for the following month. *Id.* at 239.

Baum followed up with Dr. Fernandes on April 15, 2020, and stated that she discontinued lurasidone due to experiencing side effects. Filing No. 9-7 at 241. Dr. Fernandes prescribed Prozac and continued prescriptions for lorazepam and Adderall. *Id.*

On August 22, 2020, Baum was admitted to the emergency department at CHI Health Immanuel for a severe manic episode. Filing No. 9-7 at 110. She presented with rambling speech, nonsensical continuous talking, and visual hallucinations. *Id.* at 125. She was prescribed Zyprexa and Benadryl to calm her. *Id.* at 178. Baum was diagnosed with acute psychosis and discharged the following day with recommendations to follow-up with her psychiatrist. *Id.* at 128.

On August 31, 2020, Baum met with Dr. Fernandes with no improvement. Filing No. 9-7 at 246. Baum reported cycling through manic and depressive phases. *Id.* Dr. Fernandes observed Baum talking continuously and noted she appeared hyper. *Id.* Baum remained hesitant to try antipsychotic medication for these symptoms. *Id.* Dr. Fernandes suggested she try olanzapine for mood stabilization. *Id.* at 249.

On October 8, 2020, Baum followed up with Dr. Fernandes and reported feeling better after starting olanzapine. Filing No. 9-7 at 252. Baum felt calmer and her depression had subsided. *Id.* Dr. Fernandes noted that her symptoms appeared mild and intermittent. *Id.* Dr. Fernandes recommended a follow-up appointment two months later and continued the same prescriptions. *Id.* at 254.

During an additional follow-up appointment with Dr. Fernandes on December 17, 2020, Baum reported that her bipolar, depression, and anxiety symptoms were impacting her day-to-day function. Filing No. 9-7 at 267. Baum stated she had been feeling "low" and that she had called the suicide prevention hotline several times. *Id.* As a result, Dr. Fernandes increased the olanzapine dosage from 10mg to 20mg daily and recommended a follow up appointment. *Id.*

On February 22, 2021, Baum recommenced talk therapy appointments with Wiley to address her persistent depressive symptoms. Filing No. 9-7 at 283. Baum discussed her hospitalization, hallucinations, her desire for treatment, and plans to appeal the disability decision. *Id.* Wiley noted that Baum's mood appeared stable, and she was very talkative. *Id.* at 284.

On February 25, 2021, Baum followed up with Dr. Fernandes regarding her bipolar disorder symptoms. Filing No. 9-7 at 289. Dr. Fernandes recommended that Baum discontinue Prozac and added Effexor as Baum reported the Effexor was more helpful. *Id.* Baum's symptoms did not impair her day-to-day activities, but she reported feelings of hopelessness. *Id.* Dr. Fernandes scheduled an additional follow-up appointment in one month. *Id.* at 291.

On March 5, 2021, Baum saw Ms. Wiley for another therapy appointment. Filing No. 9-7 at 294. Baum reported having difficulty going outside and leaving her apartment. *Id.* Ms. Wiley discussed the importance of trying new things and finding opportunities to leave the apartment. *Id.* Ms. Wiley noted Baum appeared anxious and talkative. *Id.*

In another therapy appointment with Ms. Wiley on March 15, 2021, Baum expressed interest in Seroquel and transcranial magnetic stimulation treatment for her

8

depression. Filing No. 9-7 at 298. Ms. Wiley observed Baum frequently changing conversation topics and noted a difficulty in following her train of thought. *Id.*

During a follow-up appointment with Dr. Fernandes March 23, 2021, Baum reported an interest in continuing Prozac rather than the previously prescribed Effexor. Filing No. 9-7 at 299. Baum's depression symptoms showed improvement and she no longer experienced "crying spells." *Id.* The olanzapine effectively stabilized her bipolar symptoms. *Id.* Dr. Fernandes continued all of Baum's ongoing prescriptions. *Id.* at 300.

Baum saw Ms. Wiley on April 12, 2021, with concerns for her increased anxiety symptoms. Filing No. 9-7 at 304. Due to these symptoms, Baum required help with tasks such as grocery shopping and phone calls. *Id.* at 305. Baum scheduled a cardiology appointment over the phone with Ms. Wiley's support. *Id.*

On May 14, 2021, Baum discussed with Ms. Wiley her increase in anxiety and fear of leaving her home to complete daily tasks. Filing No. 9-7 at 336. Ms. Wiley encouraged her to start taking her dog for walks outside to work on those concerns. *Id.*

Baum followed up with Dr. Fernandes on May 27, 2021, and reported an improvement in her depression and bipolar symptoms yet was struggling to leave her home. Filing No. 9-7 at 337. She reported feeling nervous about her disability determination. *Id.* Baum was not experiencing hallucinations, manic episodes, or negative thinking. *Id.*

On June 7, 2021, Ms. Wiley and Baum discussed her ex-husband's treatment of her and the impact of a potential move to Albion, Nebraska. Filing No. 9-7 at 342. Baum's agoraphobia continued to increase. *Id.* at 343. She feared that if she were to leave her home, she would have to speak to someone. *Id.*

## IV. The ALJ's Findings

Ultimately, the ALJ found Baum was not disabled. Filing No. 9-2 at 28. The ALJ used the five-step sequential evaluation process (20 C.F.R. § 404.1520(a)) in determining the status of disability. Filing No. 9-2 at 16–17. The ALJ determined that Baum met the insured status requirements of the Social Security Act. *Id.* at 17. At Step One, the ALJ found that Baum had not engaged in substantial gainful activity since the alleged onset date of April 20, 2020. *Id.*

At Step Two, the ALJ found that Baum suffered from major depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder, and classified those mental ailments as severe impairments. Filing No. 9-2 at 17. The ALJ contended that Baum's physical impairments: obesity, asthma, tachycardia, and hypertension, have no more than a minimal limitation on Baum's ability to perform basic work, and are therefore, non-severe under 20 C.F.R. § 404.1520a(d)(1). *Id.* The ALJ noted that these additional impairments were intermittent or have improved with treatment. *Id.* Baum did not raise concerns regarding her ability to perform work due to her obesity, nor was there evidence in support of such a contention. *Id.* Thus, obesity, alone or in conjunction with other impairments, did not significantly limit Baum. *Id.* The ALJ addressed Baum's reports of back pain, yet due to the lack of medical evidence, "the existence of an impairment cannot be medically determined." *Id.* at 19.

At Step Three, the ALJ found that Baum's mental impairments did not meet, or medically equal, the criteria of an impairment as listed in 20 C.F.R. § 404.1520. Filing No. 9-2 at 19. In support of this finding, the ALJ stated that these impairments did not result in one extreme limitation or two marked limitations in a broad area of functioning. *Id.* The ALJ stated that while Baum experienced some mild to moderate limitations

10

regarding memory, social interaction, and caring for herself, none of these limitations significantly prevent Baum from recalling facts, interacting with others, or managing herself. Id. at 19–20. The ALJ cited the fact that Baum lives alone, cooks, cleans, and cares for her dog as support for this contention. Id. The ALJ also found that Baum's mental impairments failed to persist for a duration of at least two years, along with the presence of treatment and an inability to adapt to change. Id.

The ALJ determined that Baum has the residual functional capacity ("RFC") to perform work at all exertional levels but is limited to instructions that are more than simple but less than complex, and tasks that do not require more than occasional contact with others. Filing No. 9-2 at 21. The ALJ noted that this determination was made by considering all of Baum's symptoms to the extent that those symptoms can reasonably be accepted as consistent with the objective medical evidence. Id.

The ALJ first evaluated statements submitted by Baum's daughter, Brittany Brown. Filing No. 9-2 at 25. Brown stated that her mother's depression significantly impaired her day-to-day activities, and she sleeps much of the day. Id. She further stated that Baum struggled to take care of herself and has difficulty understanding, remembering facts, and concentrating. Id. The ALJ remarked that these statements mirrored Baum's own description of her symptoms but concluded that they were not consistent with medical records reflecting impairments of a lesser severity. Id.

The ALJ considered Dr. Fernandes's opinion that Baum suffered from significant limitations impacting her ability to sustain consistent work and follow instructions without interruption. Filing No. 9-2 at 23. The ALJ found Dr. Fernandes's opinion only partially persuasive, as portions of his opinion were inconsistent with his notes. Id. at 25. Dr. Fernandes observed that Baum had responded well to treatment when she complied with

11

prescriptions and many of her symptoms ranged from mild to moderate. *Id.* However, Dr. Fernandes also opined that Baum missed approximately four days of work per week, which the ALJ contended was not supported by his frequent observations of normal and controlled mental status. *Id.* at 26.

The ALJ also considered Wiley's opinion that largely comported with that of Dr. Fernandes. Filing No. 9-2 at 23. Wiley expressed concerns that Baum could not meet competitive demands in many professional settings and her limitations would result in her absence from work for more than four days per week. *Id.* The ALJ found Wiley's opinion not persuasive as it was inconsistent with treatment records provided by several medical professionals. *Id.*

The ALJ also considered the opinion of the state agency medical physical consultant, who opined Baum could perform work at all exertional levels. Filing No. 9-2 at 26. The state agency medical psychological consultant determined that Baum would have no more than moderate limitations in all functional levels. *Id.* In sum, the ALJ determined that the RFC assessment was supported by the record, and that the claim that Baum is unable to engage in any kind of full-time, competitive, and gainful employment on a sustained basis, was not persuasive. *Id.*

At Step Four, the ALJ found that Baum is incapable of performing past relevant work as a user support analyst as she is "limited to more than simple but less than complex instructions and tasks." Filing No. 9-2 at 27.

At Step Five, in relying on the VE's testimony, the ALJ found that Baum could perform several other jobs and activities despite her limitations such as: linen room attendant, laundry worker, and counter supply worker. Filing No. 9-2 at 28.

Having completed Steps One through Five, the ALJ found that Baum was not disabled as defined by the Social Security Act. Filing No. 9-2 at 28.

**STANDARD OF REVIEW**

When reviewing a determination for Social Security Disability benefits, the district court does not act as a factfinder or substitute its judgment for the judgment of the ALJ or the Commissioner. See *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995) (citing *Loving v. Dep't of Health & Hum. Servs., Sec'y*, 16 F.3d 967, 969 (8th Cir. 1994)). The court's review is limited to an inquiry into whether there is substantial evidence on the record to support the findings of the ALJ and whether the ALJ applied the correct legal standards. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). Substantial evidence equates to something less than a preponderance of the evidence, but more than a mere scintilla; such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

However, this "review is more than a search of the record for evidence supporting the [Commissioner's] findings," and "requires a scrutinizing analysis." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (quoting *Hunt v. Massanari*, 250 F.3d 622, 623 (8th Cir. 2001); *Cooper v. Sec'y of Health & Hum. Servs.*, 919 F.2d 1317, 1320 (8th Cir. 1990)). In determining whether there is substantial evidence to support the Commissioner's decision, the court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

**DISCUSSION**

**I.   The ALJ's Evaluation of Medical Evidence**

The ALJ must consider several factors in the evaluation of medical opinions, the two most important being the supportability of the opinion and consistency with the record. 20 C.F.R. § 404.1520c(a)-(b). Further, "When an ALJ discounts a treating physician's opinion, the ALJ should give 'good reasons' for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002)). Failure to articulate these reasons for disregarding a medical opinion requires a reversal. *Singh v. Apfel*, 222 F3.d 448, 452 (8th Cir. 2000); 20 C.F.R. § 404.1527(d)(2). Sentence four of Section 405(g) allows a reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Baum and the Commissioner agree that a sentence-four remand is appropriate as the ALJ failed to properly evaluate the medical opinions offered in this case. Filing No. 13 at 4; Filing No. 18 at 1. The ALJ failed to list citations to the record in support of his findings regarding Ms. Wiley. Other than misstating the amount of work Dr. Fernandes expected Baum to miss, the ALJ provided no other reasons for finding this opinion as only partially persuasive. As the statute expressly requires the ALJ to list good reasons for their findings, the Court agrees remand is proper. *Davidson*, 501 F. 3d at 990.

**II.   Remedy**

The only remaining issue before the Court is whether the matter should be reversed and remanded for an immediate award of benefits or reversed and remanded for further proceedings.

When a court identifies an error in administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002); *Gonzales v. Thomas*, 547 U.S. 183, 185-87 (2006). In contrast, to remand for an immediate award of benefits, the evidence of disability must be overwhelming such that a remand for further proceedings would merely delay the receipt of benefits. *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001) (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984). In all other cases, the proper remedy is a remand for further proceedings due to "abundant deference to the ALJ." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) *(quoting Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992)*.*

In the present case, the record does not support an overwhelming finding that Baum is disabled. The facts before the Court are only partially convincing. The evidence, no doubt, shows Baum suffers from anxiety and agoraphobia preventing her from leaving her home. Filing No. 9-7 at 294. She suffers from the cycles of bipolar disorder and depression that impact her day-to-day function and focus. *Id.* at 267. Baum has a prior suicide attempt and hospitalization. *Id.* at 90. While her ex-husband was no longer living with her at the time of Baum's testimony, he still assisted her with grocery shopping and retrieving prescriptions. *Id.* at 41.

Notably, Baum's own characterization of her symptoms at her hearing was far less severe than in her briefs. When the ALJ asked Baum whether she could return to her IT job, rather than cite her mental illnesses, Baum feared she missed updates and changes in the computer systems, thus preventing her from providing IT support. Filing No. 9-2 at 44. However, Baum continued to complete "worksheets" to keep up with "new changes" in Microsoft products, specifically Excel. *Id.* at 49. Baum continued to give occasional

15

assistance to the IT department with her prior employer without pay. *Id.* at 46. Baum later stated her focus and racing thoughts had a role in her inability to apply for a new job or return to her prior position. *Id.* at 49. Baum's attorney asked whether she looked at spreadsheets "on her down days" to which Baum first replied that she could, but does not, and later clarified saying she does not look at her computer on these days. *Id.* at 52. These contradictory or vague statements do not allow the Court to easily identify impairments so severe that an immediate award of benefits is warranted.

Furthermore, impairments that improve with treatment do not support a finding of immediate disability. *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009). A review of the medical records shows Baum's symptoms were mild to moderate more frequently than they were severe. Dr. Fernandes at times noted that Baum's symptoms were under control and that she responded well to treatment. Filing No. 9-7 at 252. Baum noticed an improvement in her symptoms while on medication. *Id.* at 299. When Baum did report struggling with her depression, anxiety, or bipolar disorder, her complaints reflected only mild to moderate impairment such as "not feeling right," "feeling low," sleeping for large portions of the day, or crying spells. *Id.* at 228. Baum's only severe manic episode was the hospitalization for psychosis in August of 2020. *Id.* at 110. Following that treatment, Baum began antipsychotic medication and did not experience another episode. *Id.* at 249–52.

Baum cites *Hutsell v. Massanari*, 259 F.3d 707 (8th Cir. 2001), to argue that improvement in her bipolar disorder and depression alone does not necessitate a finding that she is not disabled. However, the *Hutsell* court merely acknowledged that the inherent nature of mental disorders causes symptoms to wax and wane, and a finding that a claimant is not disabled may not be established by such temporary improvement.

16

Notably, Baum's most severe symptoms occurred because of her refusal to take antipsychotic medication or her own discontinuance of it. Thus, *Hutsell* lends little support for Baum's contention.

Baum disputes the ALJ's conclusion that she did not experience a significant mental decline following the loss of her job. Filing No. 13 at 14. Baum argues that the ALJ's finding that she did not have the RFC to perform her past IT work is evidence of such a decline. *Id.* However, Baum's inability to perform her past work does not entirely preclude her from gainful employment. This is especially true when her symptoms are manageable when she is compliant with her treatment plan. Although there is evidence of decline, it does not clearly rise to the level of disability under the statute. Thus, a remand for further proceedings on this matter is required to properly weigh the evidence.

Baum requests this Court to find that her case is similar to *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009). In that case, the ALJ erroneously found claimant was not disabled, although she experienced homicidal ideation and threatened others, she could not sustain employment for longer than a few weeks and was frequently admitted to psychiatric facilities for treatment. *Id.* at 937–39. Further, the claimant suffered from delusions and denied existence of her mental illness. *Id.* The Eighth Circuit determined a remand for immediate award of benefits was appropriate. *Id.* at 947. The facts in that case do not mirror the facts in the present one in any way. Pate-Fires suffered from obviously extreme impairments and was a harm to others as well as herself. *Id.* at 938. Doctors found Pate-Fires's prognosis to be poor. *Id.* Baum's illnesses are relatively well-managed. Thus, a parallel between the two fact patterns cannot be drawn.

17

**CONCLUSION**

Where the record does not support an overwhelming finding of disability under 20 C.F.R. § 404.1520c(a)–(b), the Court must remand the matter to the SSA for further proceedings.

**THEREFORE, IT IS ORDERED:**

1. Plaintiff's motion to reverse (Filing No. 12) is granted in part;
2. Defendant's motion to remand (Filing No. 17) is granted;
3. The decision of the Commissioner is reversed;
4. This action is remanded to the Social Security Administration for further proceedings; and
5. A judgment will be entered in conjunction with this Memorandum and Order.

Dated this 2nd day of November, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge